# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CBM MINISTRIES OF SOUTH CENTRAL PENNSYLVANIA,** | CIVIL ACTION NO. 15-CV-2147 |
| Plaintiff | (Chief Judge Conner) |
| v. | |
| **LESLIE S. RICHARDS**, in her official capacity as Secretary of the Pennsylvania Department of Transportation, and **COLONEL TYREE C. BLOCKER**, in his official capacity as Commissioner of the Pennsylvania State Police, | |
| Defendants | |

## **MEMORANDUM**

CBM Ministries of South Central Pennsylvania ("CBM") commenced this action against Leslie S. Richards, in her official capacity as Secretary of the Pennsylvania Department of Transportation ("PennDOT"), and Colonel Tyree C. Blocker, in his official capacity as commissioner[1] of the Pennsylvania State Police ("State Police"). Presently before the court are the parties' cross-motions (Docs. 45, 49) for summary judgment on CBM's claims.

---

[1] Tyree C. Blocker was acting commissioner when CBM commenced the instant action. On December 10, 2015, the Pennsylvania Senate confirmed Blocker's nomination to Pennsylvania State Police Commissioner. PA. LEGIS. J. S. 199-74, 74th Sess., at 1403-06 (2015).

I.  **<u>Factual Background & Procedural History</u>**[2]

CBM is a religious, nonprofit organization doing business under the name "Joy El."  (Doc. 46 ¶ 4; Doc. 50 ¶ 1; Doc. 54 ¶ 4; Doc. 57 ¶ 1).  CBM engages in three types of ministries: (1) release time Bible education, (2) leadership training, and (3) camps or retreats.  (Doc. 46 ¶ 10; Doc. 54 ¶ 10).  The release time program provides off-site religious instruction to students whose parents allow them to leave school to attend the program.  (Doc. 50 ¶ 2; Doc. 57 ¶ 2).  The program is authorized by Pennsylvania law, see 24 PA. STAT. AND CONS. STAT. ANN. § 15-1546, which allows students to attend release time instruction for up to thirty-six hours per school year.  (Doc. 50 ¶ 2; Doc. 57 ¶ 2).  CBM's release time program is run by over 1,300 volunteers and serves more than 3,000 students each year.  (Doc. 46 ¶ 11; Doc. 50 ¶¶ 3-4; Doc. 54 ¶ 11; Doc. 57 ¶¶ 3-4).

The release time program convenes during the school day at churches or community buildings near the school.  (Doc. 46 ¶¶ 14, 16; Doc. 50 ¶ 2; Doc. 54 ¶¶ 14, 16; Doc. 57 ¶ 2).  CBM does not have a contractual relationship with any school or school district with regard to release time programming.  (Doc. 50 ¶ 5; Doc. 57 ¶ 5).  The majority of enrolled children travel to the release time program on CBM's fleet

---

[2] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  LOCAL RULE OF COURT 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried.  Id.  Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts.  (See Docs. 46, 50, 54, 57).  To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

of sixteen buses. (Doc. 46 ¶¶ 15, 36; Doc. 50 ¶ 2; Doc. 54 ¶¶ 15, 36; Doc. 57 ¶ 2). At all times relevant hereto, CBM's vehicles passed routine PennDOT inspections. (Doc. 50 ¶ 7; Doc. 57 ¶ 7).

On September 9, 2015, CBM volunteer Ann Browder ("Browder") drove a CBM vehicle to an elementary school in Franklin County to pick up students for the release time program. (Doc. 46 ¶¶ 24-25; Doc. 54 ¶¶ 24-25). A State Police trooper spoke with Browder at the school and stated that she could not transport students because the vehicle was not inspected by the Pennsylvania State Police. (See Doc. 46 ¶¶ 26-29; Doc. 54 ¶¶ 26-29). State Police troopers again stopped Browder as she drove a CBM vehicle on September 23, 2015. (Doc. 46 ¶¶ 30-33; Doc. 50 ¶¶ 9-10; Doc. 54 ¶¶ 30-33; Doc. 57 ¶¶ 9-10). The officers cited Browder and CBM for violating state regulations concerning school bus safety, to wit: 67 PA. CODE § 171.1 *et seq*. (See Doc. 46 ¶ 33; Doc. 50 ¶ 10; Doc. 54 ¶ 33; Doc. 57 ¶ 10). CBM did not use its vehicles from September 23, 2015 until December 2, 2015. (Doc. 50 ¶ 12; Doc. 57 ¶ 12).

CBM filed a complaint in the Franklin County Court of Common Pleas on October 26, 2015. (Doc. 1 at 9-22). CBM alleged therein that the citation forced CBM to choose between two costly alternatives: grounding its vehicles and paying for other transportation services, or complying with the school bus regulations at an "enormous financial" cost. (Id. at 14). The parties dispute the necessity of "grounding" all of CBM's vehicles from September 23, 2015 to December 2, 2015: CBM avers that the State Police grounded their entire fleet of vehicles, (Doc. 50 ¶ 12), while defendants contend that the State Police grounded only one bus, (Doc. 57 ¶ 12). CBM sought a declaratory judgment that Pennsylvania's regulations

3

concerning school buses do not apply to its vehicles pursuant to the Pennsylvania Declaratory Judgments Act, 42 PA. CONS. STAT. § 7531 *et seq.* (Doc. 1 at 16-17). CBM also alleged violations of Pennsylvania's Religious Freedom Protection Act, 71 PA. STAT. AND CONS. STAT. ANN. §§ 2401-07, and the Establishment Clause of the First Amendment. (Doc. 1 at 17-20).

Defendants timely removed the case to this court on November 10, 2015. (See id. at 2). CBM filed a motion (Doc. 8) for preliminary injunction on the same date, and the court held a preliminary injunction hearing on November 23, 2015. (See Doc. 64). We granted CBM's motion for a preliminary injunction on December 2, 2015, finding that CBM demonstrated a likelihood of success on its claim under the Pennsylvania Declaratory Judgments Act. (Docs. 21-22). Thereafter, CBM filed an amended complaint, reframing its declaratory judgment claim under the federal Declaratory Judgment Act, 28 U.S.C. § 2201, reasserting its Religious Freedom Protection Act and Establishment Clause claims, and adding a claim under the Free Exercise Clause of the First Amendment. (See Doc. 27). Following a period of discovery, the parties cross-moved for summary judgment. (Docs. 45, 49). Both motions are fully briefed and ripe for disposition.[3]

---

[3] Defendants submit that the court should deny CBM's motion for summary judgment for failure to file a supporting brief contemporaneous with its Rule 56 motion. (Doc. 59 at 16). CBM timely filed its brief (Doc. 52) in support of summary judgment in accordance with the Local Rules of Court, LOCAL RULE OF COURT 7.5, despite its tardiness in regard to the court's scheduling order. (Doc. 43). The court will therefore exercise its discretion to consider CBM's filing as timely submitted.

4

## II. Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. FED. R. CIV. P. 56(a). The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. See Pappas, 331 F. Supp. 2d at 315.

Courts are permitted to resolve cross-motions for summary judgment concurrently. See Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008); see also Johnson v. Fed. Express Corp., 996 F. Supp. 2d 302, 312 (M.D. Pa. 2014); 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 2015). When doing so, the court is bound to view the evidence in the light most favorable to the non-moving party with respect to each motion. FED. R. CIV. P. 56; Lawrence, 527 F.3d at 310 (quoting Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)).

## III. Discussion

The Pennsylvania Vehicle Code ("Vehicle Code") defines "school bus" as follows: "[a] motor vehicle which: (1) is designed to carry 11 passengers or more, including the driver; and (2) is used for the transportation of preprimary, primary or secondary school students to or from public, private or parochial schools or events related to these schools or school-related activities." 75 PA. CONS. STAT. § 102. Regulations promulgated by PennDOT define "school bus" concordant with the Vehicle Code definition. 67 PA. CODE § 171.2. CBM submits that this definition does not apply to its vehicles. (Doc. 27 ¶ 43). Defendants have conceded this point. (Doc. 21 at 5-6).

The Vehicle Code directs PennDOT to promulgate regulations "governing the safe design, construction, equipment and operation of vehicles engaged in the transportation of school children." 75 PA. CONS. STAT. § 4551(a). This provision limits PennDOT's regulatory authority to school buses and school vehicles which are "owned by or under contract with any school district or parochial or private school." Id. CBM asserts that its vehicles are unencumbered by this enabling statute because they are not owned or contracted by a school district. (Doc. 27 ¶ 43, Doc. 52 at 4-8). Defendants rejoin that the statute encompasses vehicles like CBM's. (Doc. 47 at 20-29). We first address CBM's request for declaratory judgment before turning to CBM's constitutional and statutory claims.

### A. Declaratory Judgment

Pursuant to the federal Declaratory Judgment Act, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other

6

legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. Unable to abrogate the constitutional prohibition against advisory opinions, see U.S. CONST. art. III, § 2, Congress expressly limited federal courts' authority under the Act to matters involving a "case of actual controversy." 28 U.S.C. § 2201. The Act provides a procedural remedy only. Fed. Kemper Ins. Co. v. Rauscher, 807 F.2d 345, 351 (3d Cir. 1986); McCahill v. Borough of Fox Chapel, 438 F.2d 213, 214 (3d Cir. 1971) (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240 (1937)). It does not create substantive rights and is not "an independent basis of federal jurisdiction." Terra Nova Ins. Co. v. 900 Bar, Inc., 887 F.2d 1213, 1218 n.2 (3d Cir. 1989) (citing Skelly Oil Co. v. Phillips Petrol. Co., 339 U.S. 667, 671 (1950); Rauscher, 807 F.2d at 351); Jones v. Bd. of Probation & Parole, 281 F. Supp. 62, 63 (E.D. Pa. 1968).

Defendants aver that CBM has no independent cause of action to substantiate its claim for declaratory judgment. (Doc. 59 at 5-6). The court is compelled to agree. CBM asks the court to construe the Vehicle Code to exclude its school buses from the school bus regulations, but does not tether this request to any separate or substantive cause of action.[4] (See Doc. 27 ¶¶ 42-43; see also Doc. 52 at 5-12). *In essentia*, CBM entreats the court to interpret Pennsylvania's statutory framework in a vacuum as a separate theory of recovery or cause of action. (See

---

[4] CBM does not respond to defendants' contention that it lacks a substantive basis for its declaratory judgment claim. It simply asserts that its claim concerns an ongoing controversy, (Doc. 61 at 3-4), alluding to the federal ripeness requirement for declaratory judgment claims. See Peachlum v. City of York, 333 F.3d 429, 433 (3d Cir. 2003) (citing Abbott Labs. v. Gardner, 387 U.S. 136, 148-49 (1967)). CBM's claim for declaratory judgment may be procedurally judicable before the court, but that does not alter the fact that the claim does not have the requisite substantive footing.

7

Doc. 27 ¶¶ 42-43). The court cannot dispense a procedural remedy when that remedy is not linked to an independent claim. See Fed. Kemper Ins., 807 F.2d at 351; Jones, 281 F. Supp. at 63. The court must accordingly dismiss CBM's claim for declaratory judgment.[5]

B.     **Constitutional Claims**

Section 1983 of Title 42 of the United States Code provides a cause of action to redress violations of federal law committed by state officials. See 42 U.S.C. § 1983. Section 1983 is not a source of substantive rights, but merely a method for vindicating those rights otherwise protected by federal law. Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To establish a claim under Section 1983, plaintiff must show a deprivation of a "right

---

[5] We dismiss this claim without prejudice to CBM's right to reinstate its original claim for declaratory judgment under Pennsylvania law. The court found at the preliminary injunction stage that the language of the enabling statute is irrefragable. The Vehicle Code circumscribes PennDOT's rulemaking authority to only school buses and other vehicles transporting school children that are "*owned by or under contract* with any school district or parochial or private school." 75 PA. CONS. STAT. § 4551(a) (emphasis added). There is no dispute that CBM is not a school or a contractor for a school district. (Doc. 50 ¶ 5; Doc. 57 ¶ 5). Hence, any regulations promulgated in accordance with the enabling statute do not apply to CBM's vehicles. (See Doc. 21 at 11-13). But the court rendered its determination at the preliminary injunction stage pursuant to Pennsylvania's Declaratory Judgments Act, which explicitly provides a cause of action for interpreting statutory language independent of a substantive claim. See 42 PA. CONS. STAT. § 7533 ("Any person . . . whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the [statute] and obtain a declaration of rights, status, or other legal relations thereunder."); Buehl v. Beard, 54 A.3d 412, 419 (Pa. Commw. Ct. 2012), aff'd, 91 A.3d 100 (2014) (noting that Pennsylvania's declaratory judgment statute permits an action to proceed on question of statutory construction when plaintiff demonstrates "imminent and inevitable litigation, and a direct, substantial and present interest"). No such provision exists in the federal statute. See 28 U.S.C. § 2201; see also Fed. Kemper Ins., 807 F.2d at 351; Jones, 281 F. Supp. at 63. In this respect, CBM's amended complaint is the heart of the problem.

8

secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)). There is no dispute that defendants are state actors for purposes of Section 1983.[6] We thus consider only whether defendants deprived CBM of its constitutional rights.

### 1. *Free Exercise Clause*

CBM alleges that enforcement of the school bus regulations substantially burdens CBM's religious exercise. (Doc. 27 ¶ 58). CBM avers that it was unable to use its vehicles from September 23, 2015 until December 2, 2015[7] and on at least one occasion State Police prevented Browder from busing children to a release time program. (Id. ¶¶ 31-32; Doc. 46 ¶¶ 27-29; Doc. 50 ¶ 12). Assuming *arguendo* that the contested regulations apply to CBM, we examine these alleged violations of CBM's right to freely exercise its religion.

---

[6] Defendants raise several sovereign immunity and qualified immunity defenses. (Doc. 47 at 15-19). Defendants are correct that CBM may not seek monetary damages against them. McCauley v. Univ. of the V.I., 618 F.3d 232, 241 (3d Cir. 2010). But defendants' contentions that qualified immunity and their lack of personal involvement protect them from suit fail as a matter of law. CBM sued defendants in their official capacities; consequently, neither defendant may invoke qualified immunity. See Williams v. Sec'y Pa. Dep't of Corr., 848 F.3d 549, 572 n.151 (3d Cir. 2017) (citing Melo v. Hafer, 912 F.2d 628, 636 (3d Cir. 1990)). The requirement of personal involvement in matters giving rise to litigation similarly does not apply to official-capacity claims, see Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)), which are duplicative of claims against the government entity, see Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978)).

[7] Defendants assert that CBM brought this harm upon itself by unilaterally grounding its vehicles. (Doc. 57 ¶ 12). The court finds this remonstration rather tenuous because CBM would have run the risk of accumulating more citations if it operated its vehicles.

9

The First Amendment to the United States Constitution is made applicable to the states by the Fourteenth Amendment. Cantwell v. Connecticut, 310 U.S. 296, 303 (1940). It provides, *inter alia*, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. CONST. amend. I. A Free Exercise claim may elicit either strict scrutiny or rational basis review, depending on the type of challenged law or agency action. Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly, 309 F.3d 144, 165 (3d Cir. 2002).

The Free Exercise Clause does not apply to "neutral" and "generally applicable" laws which only incidentally burden religious conduct. Id. (citing Emp't Div., Dep't of Human Res. of Or. v. Smith, 494 U.S. 872, 879 (1990)). A law which does not meet these benchmarks—*i.e.*, one which "discriminates against religiously motivated conduct" or "proscribes particular conduct only or primarily when religiously motivated," respectively—is subject to strict scrutiny. Id. (citing Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 532 (1993)). When a particular law grants officials a degree of discretion, the government must enforce the law uniformly. Id. at 166-67; Fraternal Order of Police Newark Lodge No. 12 v. City of Newark, 170 F.3d 359, 364-65 (3d Cir. 1999). It may not exempt or favor "secularly motivated conduct" to "comparable religiously motivated conduct." Tenafly, 309 F.3d at 166; see Fraternal Order of Police, 170 F.3d at 364-65. If a law does not meet these requirements, the government must justify its endeavors with a narrowly tailored and compelling governmental interest. Lukumi, 508 U.S. at 531-32; Tenafly, 309 F.3d at 172 (quoting Lukumi, 508 U.S. at 546).

The statutory framework *sub judice* does not merit strict scrutiny review. The enabling statute concerns school buses, not religious conduct. See 75 PA. CONS. STAT. § 4551; see also Lukumi, 508 U.S. at 533-54. The regulations promulgated by PennDOT apply to school buses "owned by or under contract with any school district or parochial or private school." 75 PA. CONS. STAT. § 4551(a). Although the word "parochial" is utilized, the statute plainly applies with equal force to religious and nonreligious schools. Cf. Lukumi, 508 U.S. at 533-54; Tenafly, 309 F.3d at 165. The enabling statute is facially neutral and generally applicable.

CBM argues that defendants do not enforce the contested regulations uniformly because they "single[] out" religious organizations. (Doc. 52 at 13; see Doc. 27 ¶¶ 59-65). Even when reviewing the record in the light most favorable to CBM, the record is devoid of evidence sufficient to satisfy CBM's Rule 56 burden. See FED. R. CIV. P. 56; Lawrence, 527 F.3d at 310. The State Police school bus inspection records submitted to the court include inspections of a nonreligious entity, Franklin County Career & Technology, as well as various religious entities. (See Doc. 59-2). CBM has not shown that defendants exempted secular school buses but not religiously-affiliated school buses from enforcement. See Lukumi, 508 U.S. at 533-54; Fraternal Order of Police, 170 F.3d at 364-65. Any burden on CBM's religious conduct flowing from defendants' uniform enforcement of the regulations is merely "incidental." See Lukumi, 508 U.S. at 531 (citing Smith, 494 U.S. at 879); Tenafly, 309 F.3d at 165-68. There is no evidence from which a trier of fact could find a violation of the Free Exercise Clause. We will grant defendants summary judgment with regard to this claim.

### 2. *Establishment Clause*

CBM alleges violation of the Establishment Clause based on the perceived applicability of certain school bus regulations. (See Doc. 27 ¶¶ 67-73). Specifically, CBM avers that forcing it "to mark and advertise its Vehicles as 'School Buses' would create the impression that the activities to which they carry students are school-sponsored and government-funded." (Id. ¶ 69). Defendants agreed at the preliminary injunction hearing that CBM's vehicles are not "school buses" within the definition of the Vehicle Code and regulations promulgated thereunder. (See Doc. 21 at 5-6, 12-13; see also Doc. 19 at 13). Defendants maintain that CBM's vehicles must only comply with inspection standards for "multifunction school activity bus[es]," 67 PA. CODE § 171.2, which do not include school bus labeling requirements. (Doc. 47 at 14; Doc. 67 at 88:22-89:9). In view of defendants' concession that the problematic labeling regulations do not apply to CBM's vehicles, the court will dismiss this claim as moot.

### C. State Law Claim

CBM also asserts a statutory claim under Pennsylvania's Religious Freedom Protection Act. 71 PA. STAT. AND CONS. STAT. ANN. §§ 2401-07. Defendants ask the court to decline jurisdiction over this state law claim. (Doc. 47 at 19-20). A federal district court "may decline to exercise supplemental jurisdiction over a claim . . . if the [] court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Upon declining jurisdiction of a state law claim pursuant to § 1367(c)(3), the court may remand a case removed from state court. See Hudson United Bank v. LiTenda Mortg. Corp., 142 F.3d 151, 157-58 (3d Cir. 1998). We

therefore will not exercise supplemental jurisdiction over CBM's state law claim and will remand this matter to the Franklin County Court of Common Pleas for further proceedings.

## IV. Conclusion

The court will grant defendants' motion for summary judgment in part, deny CBM's motion for summary judgment, and remand CBM's state law claim. An appropriate order shall issue.

      /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: September 19, 2017